# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | No. A-19-M-251 AWA |
| | § | (N.D. Ill. No. 18-CR-635) |
| JAVIER GONZALEZ | § | |

## ORDER

On May 14, 2019, the Court held a hearing on the government's motion to detain Javier Gonzalez pending trial. The motion was based on two assertions: the pending charge is an offense for which a sentence of at least ten years is prescribed in the Controlled Substances Act, and the defendant poses a serious risk of flight.

After considering the evidence presented and the arguments of counsel, the Court concluded that Gonzalez had rebutted the statutory presumption of detention, and that the government had failed to prove by a preponderance of the evidence that there are no conditions the Court could set that would reasonably assure Gonzalez's appearance as required, and failed to prove by clear and convincing evidence that Gonzalez would pose a risk to the community if released. Accordingly, the Court denied the motion to detain and set conditions of release. The government has indicated its intention to seek review of this decision, and the undersigned issues this order so that the district judge will have a clear record of the Court's reasons for this decision.

The government proceeded by a proffer of evidence, which the AUSA stated was based on information provided by the prosecuting United States Attorney's Office in Chicago, Illinois, and by a DEA-6 report provided to the AUSA. That proffer indicated that in June 2015, the Defendant was arrested in the process of delivering boxes to another individual. The boxes contained 26 kilograms of heroin and 6 kilograms of cocaine. After his arrest, Gonzalez waived his rights to

remain silent and to counsel, and agreed to speak to DEA agents. In summary, he informed the agents that he had moved to the Chicago area from Texas to run a business "front" that purported to sell shipping containers, when in fact his job was to assist in taking delivery of narcotics and in shipping currency in return. He stated that tractor trailers would be delivered to the warehouse, and he would remove narcotics secreted in the trailers. He would receive three trailers per week, each containing 21 kilograms of heroin, or a total of more than 60 kilograms of heroin each week. This continued for several months before his arrest. He would then deliver the narcotics to various "customers" in the Chicago area, and collect payments, in the approximate amount of $500,000, which he would place back into the hidden traps in the trailers, prior to the trailers being picked up by others. He stated he was paid $8,000 per month to do this. Gonzalez was released after this de-briefing, and agreed to continue meeting with the agents the next morning. He did not return as promised, however, and became unresponsive to calls from the agents. Based on the facts above, on September 27, 2018, a federal grand jury in the Northern District of Illinois indicted Gonzalez on one count of distribution of a controlled substance involving one kilogram or more of heroin, and five kilograms or more of cocaine. If convicted on this charge, Gonzalez would be subject to a mandatory minimum sentence of ten years of imprisonment.

Gonzalez called his wife, Rosa Salinas, as a witness in support of his request for release. She testified that they had been married since 2003, and first met and began dating in high school in 1997. They have three sons, aged 15, 13, and 6. She stated that after Gonzalez was arrested in Chicago, they relocated to Austin (specifically, to the northern suburb of Pflugerville). They lived in a hotel for a few weeks until they were able to lease an apartment, and have lived in that same apartment since 2015. Since being here in Austin, Gonzalez has held several jobs, all of which he

obtained under his actual name and social security number. Since at least 2017, Gonzalez's Texas driver's license has listed his address as the apartment where he and the family have resided since 2015. Since January 2019, Gonzalez has been employed by Lonestar Electric Supply as a warehouse and project manager. As with his prior Austin jobs, for the Lonestar Electric position he receives paychecks in his actual name, and Gonzalez and Salinas have regularly filed federal income taxes since relocating to Austin. Gonzalez has also been active in a youth soccer league as a coach, and in his church. Gonzalez's parents reside in Mission, Texas, and his two brothers also live in the Rio Grande Valley. His father has advanced Alzheimer's disease. His brothers have no criminal history, and have each had long term jobs, one with Home Depot, and the other with HEB (the largest grocery chain in Texas).

On cross-examination, Salinas admitted that her sister was also arrested when Gonzalez was arrested. She further testified that the last time she traveled to Mexico was to attend her grandmother's funeral, in 2004. When asked whether she had traveled to Mexico in 2014, she hesitated, stating that she was "trying to remember." She then answered, "I don't believe I did . . . um I, I, I cannot remember going after my grandmother's death." She admitted that she had a number of aunts, uncles, and cousins who reside in Reynosa, Mexico, and that her husband also had a number of family members who reside in Diaz Ordaz, Mexico.

The Pretrial Services Office interviewed Gonzalez and submitted its report to the Court. The report notes that Gonzalez is 39 years old and is a U.S. citizen. He does not have a passport and has never resided outside of the United States. The report also contains much of the information related above by Ms. Salinas in her testimony. Based on the information it gathered, the Pretrial Office recommended that Gonzalez be released on conditions.

Based on the evidence before it, the Court reached the following conclusions. First, the Court does not believe that Gonzalez poses a flight risk if released, as there are conditions that the Court believes it could set that would reasonably assure his appearance as required. Gonzalez is a lifelong resident of Texas (with the exception of the few months he resided in Chicago). His parents still reside here, and his father is in the late stages of Alzheimer's disease. He has lived in the Austin area for three-and-a-half years, with his wife and three children. Gonzalez's devotion to his family appears to be strong. His brothers each traveled three hours to be present at the hearing. Obviously, the fact that Gonzalez apparently failed to honor his commitment to meet with DEA agents the morning after his arrest, and that he quickly moved from Chicago thereafter, are of concern to the Court. On the other hand, it is apparent that, had the DEA wished to contact or arrest Gonzalez after the initial June 2015 arrest, it could have done so long ago. He has lived openly under his actual name and identifiers since leaving Chicago. His Texas driver's license has listed his correct address for two years. There is no evidence before the Court that Gonzalez did anything to hide his whereabouts, nor is there any evidence that the government had any difficulty in locating Gonzalez once it decided to arrest him. Moreover, Gonzalez has a minimal net worth, and does not have the type of resources one ordinarily would need to flee. Gonzalez is amenable to significant conditions being placed on him if released. The conditions set by the Court include home detention with a GPS monitor, and the establishment of a $100,000 unsecured appearance bond, co-signed by both of his brothers.

Second, there is simply *no* evidence that Gonzalez poses a risk of danger to the community if he is released. When he was arrested and confronted with the search warrant for his home, Gonzalez cooperated and accepted responsibility. It appears that the agents who questioned

4

Gonzalez believed him to be credible. Other than the offense conduct—which is serious and involves very large quantities of heroin—the government did not present any evidence demonstrating that Gonzalez posed a risk of danger to anyone if released. The government offered no evidence that Gonzalez has continued to engage in any similar conduct since the 2015 arrest, and there is no evidence that he had previously engaged in such conduct. Indeed, the mere fact that the government has chosen to allow Gonzalez to remain a free man from the time he left Chicago in June 2015 until the time of his arrest days ago, belies the government's assertion that Gonzalez poses a danger to the community. Surely if he was a risk to the community, the DEA would not have allowed him to remain "on the street" for nearly four years. Moreover, from the proffer made by the government, it appears that Gonzalez's role in the offense was primarily that of a courier and mechanic, and though he was apparently handling over 60 kilograms of heroin and $1.5 million in cash each week, he was only being paid a tiny fraction of that amount—$8,000 per month. And Gonzalez's only prior arrest dates back to 2002, and involved a misdemeanor offense of making a false report, for which he received a 30 day sentence.

Because Gonzalez rebutted the presumption of detention created by § 3142(e)(3)(A), the burden is on the government to demonstrate that Gonzalez poses a flight risk or a risk to the community if released. The government's evidence fell short of that required to support detention. Consistent with the directives of the Bail Reform Act, the Court concluded that there are conditions it can set that would reasonably assure the defendant's appearance as required and the safety of the community, and entered its Order Setting Conditions of Release on May 14, 2019.[1]

---

[1] The Court became aware today that yesterday the government filed its Amended Emergency Motion for Revocation of the Magistrate Judge's Release Order in the Northern District of Illinois (Dkt. No. 10 in that case). The motion appears to contain a fair amount of evidence and other

However, as stated in open Court on May 14, 2019, the Order Setting Conditions of Release is STAYED until 5:00 p.m. CST on May 17, 2019, to permit review of that order.

SIGNED this 15th day of May, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

material that was not presented at the detention hearing. The Court is perplexed why information in the government's possession was not presented to the judge conducting the detention hearing, but—on the very same day the detention hearing took place—*was* presented in writing to the presiding court. Regardless, the undersigned will leave that matter to the reckoning of the district judge presiding over the case.